Robert L. TINDER, Petitioner,
Appellant,

v.

Sister Rose PAULA, SND, et al.,
Respondents, Appellees.

No. 83–1507.

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1983.

Decided Jan. 16, 1984.

As Amended on Denial of Rehearing
Feb. 23, 1984.

Robert W. Hagopian, Cambridge, Mass., with whom John Stopa, Cambridge, Mass., was on brief, for petitioner, appellant.

Barbara A.H. Smith, Asst. Atty. Gen., Chief, Criminal Appellate Div., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Frederick W. Riley, Asst. Atty. Gen., Chief, Criminal Bureau, Boston, Mass., were on brief, for respondents, appellees.

Before CAMPBELL, Chief Judge, SWYGERT,[*] Senior Circuit Judge, and BOWNES, Circuit Judge.

SWYGERT, Senior Circuit Judge.

Petitioner-appellant Robert Tinder appeals from the dismissal on the merits of his habeas corpus petition by the United States District Court for the District of Massachusetts. We find that there is no federal jurisdiction over Tinder's claim because Tinder was not "in custody" as required by the habeas statute at the time he filed the present petition.

On June 7, 1977, Tinder, then a fourteen-year-old juvenile, was charged in the Municipal Court of West Roxbury, Massachusetts, with being a "delinquent child" by reason of having committed arson, Mass. Gen.Law ch. 266, §§ 1 & 2. Tinder was tried with codefendant William Santana, also a juvenile, in a nonjury trial. Four of the five witnesses testifying for the Commonwealth, while indicating a motive for the offense for Tinder's codefendant, Santana, and placing Santana at the scene of the crime, did not in any way implicate Tinder in the offense. The fifth witness, who was the arresting officer and the prosecutor in the case, testified that "both boys admitted ... that they were a part of the incident ...." The officer also stated, "[Santana] told me, without questioning him, Billy [sic] Tinder was involved with him." Tinder objected and continues to object to the admission of both of these statements. The United States magistrate who considered Tinder's present habeas petition determined, however, that Santana's hearsay statement was not considered against Tinder by the trial court.

Santana testified on his own behalf. He denied having confessed to the arresting officer that he and Tinder had set the fire. He stated that he and Tinder were together on the day of the fire but that they were not involved in the incident.

On the basis of this evidence, the court adjudged Tinder and Santana delinquent and sentenced them to three-year suspended terms with the Massachusetts Department of Youth Services and ordered them each to pay restitution in the amount of $2,250.00. Tinder's probation expired on June 3, 1980. Tinder has never paid the restitution.

Tinder initially appealed for a trial *de novo* before the second tier of Massachusetts's two-tier criminal justice system, but later withdrew his appeal. Instead, Tinder filed a petition for a writ of certiorari in the United States Supreme Court, maintaining that the judgment of the Municipal Court was, in his case, a judgment from the highest state court. The Court denied certiorari. *Tinder v. Massachusetts,* 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978).

Tinder then filed a petition for a writ of habeas corpus in the federal district court which was dismissed on the grounds that Tinder had not exhausted his state court remedies. *Tinder v. Sister Rose Paula,* 468 F.Supp. 792 (D.Mass.1979). This court affirmed, Memorandum and Order, Misc. No. 79–8054 (July 5, 1979), and the Supreme Court denied certiorari, *Tinder v. Sister Rose Paula,* 445 U.S. 918, 100 S.Ct. 1281, 63 L.Ed.2d 603 (1980).

Tinder then brought a civil action in the Massachusetts Supreme Judicial Court seek-

[*] Of the Seventh Circuit, sitting by designation.

ing review pursuant to the court's powers of general superintendence, Mass.Gen.Law ch. 211, § 3. The petition was dismissed.

The instant petition for a writ of habeas corpus was then filed on September 15, 1980. Tinder alleges that the evidence was insufficient to support the Municipal Court's finding of delinquency, that the admission of certain evidence violated his constitutional rights, and that his double jeopardy rights were violated by Massachusetts's two-tier trial system. The case was referred to a magistrate who initially found that Tinder had failed to exhaust state remedies. The district court rejected this finding and remanded the case to the magistrate for consideration on the merits. On remand, the magistrate found that Tinder's remedy for the introduction of inadmissible evidence was to exercise his right to a trial *de novo* and that this system did not violate his right against double jeopardy. The magistrate concluded that the evidence was sufficient to support the court's delinquency adjudication. The district court adopted these findings and dismissed the petition.

I

The federal habeas corpus statute provides that habeas corpus shall apply "in behalf of a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a) (1976). Custody is determined from the date that a habeas petition is first filed. *Carafas v. LaVallee*, 391 U.S. 234, 238–40, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968); *Marchand v. Director, United States Probation Office,* 421 F.2d 331, 332 n. 1 (1st Cir.1970). The custody provision does not require incarceration or other actual, physical restraint of a person. *See Jones v. Cunningham,* 371 U.S. 236, 241–43, 83 S.Ct. 373, 376–77, 9 L.Ed.2d 285 (1963) (parolee is in custody); *Helm v. Jago,* 588 F.2d 1180, 1181 (6th Cir.1979) (probationer is in custody); *United States v. Hopkins,* 517 F.2d 420, 423–24 (3d Cir.1975) (person serving suspended sentence is in custody). The provision does require, however, that the person be subject to "restraints not shared by the public generally," *Jones v. Cunningham,*

*supra,* 371 U.S. at 240, 83 S.Ct. at 376, at the least there must be some type of continuing governmental supervision over the person, *see Spring v. Caldwell,* 692 F.2d 994, 997–98 (5th Cir.1982). Probationers and parolees have been found to be under governmental supervision because parolees are generally released to the custody of the parole authorities and probationers are generally placed in the custody of probation officers. After the expiration of a term of imprisonment, parole, or probation, however, the state no longer has special supervisory authority over the person. Thus, a sentence that has been fully served does not satisfy the custody requirement of the habeas statute, despite the collateral consequences that generally attend a. criminal conviction. *See Siano v. Justices of Massachusetts,* 698 F.2d 52, 55 (1st Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 80, 78 L.Ed.2d 91 (1983); *Harrison v. State,* 597 F.2d 115, 118 (7th Cir.1979); *Harvey v. State,* 526 F.2d 840, 841 (8th Cir.1975), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2236, 48 L.Ed.2d 837 (1976); *Carter v. Hardy,* 526 F.2d 314, 315 (5th Cir.), *cert. denied,* 429 U.S. 838, 97 S.Ct. 108, 50 L.Ed.2d 105 (1976).

In addition, the custody requirement serves to "preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty. Since habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate." *Hensley v. Municipal Court,* 411 U.S. 345, 351, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294 (1973); *accord Bailey v. United States Commanding Officer,* 496 F.2d 324, 325 (1st Cir.1974). Probation and parole are frequently conditioned upon terms that seriously restrain the individual's liberty. *See Jones v. Cunningham, supra,* 371 U.S. at 237, 83 S.Ct. at 374. Moreover, the possibility that probation or parole will be revoked and the individual will be incarcerated for the remainder of the sentence is ever imminent. *See id.* at 242, 83 S.Ct. at 376.

■ Penalties that do not impose such a restraint or the imminent threat of such a restraint do not meet the custody requirement of the habeas statute. Thus, for example, habeas is not available as a remedy for fine-only convictions although the defendant remains subject to the supervision of the court and failure to pay the fine could result in incarceration. *See Spring v. Caldwell, supra,* 692 F.2d at 996–97; *Duvallon v. Florida,* 691 F.2d 483, 484–85 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1533, 75 L.Ed.2d 953 (1983); *Hanson v. Circuit Court of the First Judicial Circuit,* 591 F.2d 404, 407 (7th Cir.), *cert. denied,* 444 U.S. 907, 100 S.Ct. 220, 62 L.Ed.2d 143 (1979); *Wright v. Bailey,* 544 F.2d 737, 739 (4th Cir.1976), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 82 (1977); *Russell v. City of Pierre,* 530 F.2d 791, 792 (8th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); *Edmunds v. Won Bae Chang,* 509 F.2d 39, 41 (9th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). The fine itself is not a serious restraint and the possibility that the court will resort to imprisonment to enforce the fine is considered too remote and speculative to warrant the invocation of federal habeas jurisdiction. *See Hanson v. Circuit Court of the First Judicial Circuit, supra,* 591 F.2d at 407 n. 6; *Edmunds v. Won Bae Chang, supra,* 509 F.2d at 41. In addition, persons subject to fines maintain greater "control" over the threat of imprisonment than do probationers or parolees, *see Hensley v. Municipal Court, supra,* 411 U.S. at 351–52, 93 S.Ct. at 1574–75, they generally can avoid the possibility of incarceration simply by paying the fine, *see Spring v. Caldwell, supra,* 692 F.2d at 998.

## II

■ Tinder's probationary period expired approximately three and one-half months before his petition for a writ of habeas corpus was filed. Tinder claims that his probation was never formally terminated as required by Massachusetts law, and the possibility remains that his probation will be judicially extended or revoked because he has not paid the restitution ordered by the

court. Tinder bases this claim on *Commonwealth v. Sawicki,* 369 Mass. 377, 339 N.E.2d 740 (1975), in which the Massachusetts Supreme Judicial Court determined that judicial supervision over a probationer does not terminate automatically after the set term of probation has expired but before an order of termination has been entered. The court held that supervision may extend for a reasonable time to be determined on a case-by-case basis, beyond the set term of probation for violations that occurred during the set term. *Id.* at 384–85, 339 N.E.2d at 744; *see also Commonwealth v. Ward,* 15 Mass.App. 388, 391–92, 445 N.E.2d 1094, 1096–97 (1983). In *Sawicki,* the court found that a decision not to terminate probation six months after the expiration of the set probationary term was reasonable where action was first initiated on the termination decision within six weeks after expiration of the term, the probationer attempted to conceal his probation violations and the delay did not prejudice the probationer. 369 Mass. at 386–87, 339 N.E.2d at 745.

We seriously doubt whether an extension of supervision over Tinder three and one-half months after his probationary period had expired for failure to pay a restitution order is reasonable where the Commonwealth had three years previously to enforce the openly disregarded order. If it is not a reasonable period of time, then Tinder was no longer subject to the supervision of the Massachusetts courts and was not in custody when he filed his present petition for habeas relief. Even assuming that such an extension could be found reasonable, we find that Tinder was not in custody when he filed his petition.

In the absence of a judicial determination to extend or revoke Tinder's probation, the court maintains supervision over Tinder only with respect to his conduct during the three-year probationary term. *See Commonwealth v. Sawicki, supra,* 369 Mass. at 384, 339 N.E.2d at 744. Thus, unlike a defendant under an active term of probation, Tinder is no longer subject to the terms of his probation and his present con-

duct is not subject to the supervision of the probation authorities. He, of course, remains liable for the restitution ordered by the Municipal Court, but this, like a fine-only conviction, is not a serious restraint on his liberty as to warrant habeas relief. In short, since the expiration of his probation Tinder has not been subject to severe "restraints" on his liberty "not shared by the public generally," *see Jones v. Cunningham, supra,* 371 U.S. at 240, 83 S.Ct. at 376, and will not become subject to further restraints unless and until probation is extended or revoked.

We are unable to distinguish the possibility that Tinder's probation will be extended or revoked for failure to pay restitution from a fine-only conviction case. The courts always maintain the authority to enforce an order for the payment of money. In Tinder's case, the enforcement proceeding could be one for extension or revocation of probation, while in the case of a fine-only conviction the proceeding is one for contempt of court. The possibility that the court will exercise its authority to impose a severe restraint, however, is equally speculative and remote in both cases. The Commonwealth has given no indication that it will even seek to have Tinder's probation extended or revoked. The possibility that it could obtain an order of extension or revocation drastically decreases with the passage of time. Finally, Tinder has not alleged inability to pay the restitution. We must assume that, like the fine-only convict, Tinder could pay the amount of the restitution and avoid any threat of incarceration.

### III

Tinder claims that even if he was not in custody at the time he filed the present petition for a writ of habeas corpus, he was in custody when he filed his original petition in 1979 which was dismissed by this court on the sole ground that he had failed to exhaust state remedies, *Tinder v. Sister Rose Paula,* Memorandum and Order, *supra.* Although this court's unpublished order did not mention the retention of jurisdiction, Tinder requests that retention be implied

because of the grounds for the dismissal. In other words, Tinder requests this court to find that a timely-filed habeas petition automatically gives the district court retained jurisdiction to hear the claim even if custody ends before the petition is refiled provided the original petition was dismissed solely for failure to exhaust state court remedies.

We agree that this court's prior dismissal of Tinder's habeas petition was inherently without prejudice. We decline to find, however, that there was a retention of jurisdiction over Tinder's claim such that Tinder is not now subject to the requirement of existing custody in the absence of an expression of retention in the dismissal order or any request for retention by Tinder at the time the first petition was dismissed. *Accord Kravitz v. Commonwealth,* 546 F.2d 1100, 1102–03 (3d Cir.1977).

Whether jurisdiction over a claim for habeas relief should be retained pending exhaustion of state court remedies is generally a matter within the discretion of the dismissing court. *See Blair v. People,* 340 F.2d 741, 745 (9th Cir.1965); Rule 4 foll. 28 U.S.C. § 2254 (1976). It is a determination best made by the court that is aware of the facts and circumstances surrounding the dismissal. We note that this court's order dismissing Tinder's first petition found Tinder's failure to pursue state court remedies unjustified. This would certainly have been a factor in the court's decision whether to order the district court to retain jurisdiction and is an additional reason for refusing to find a retention of jurisdiction at this late date. Moreover, we believe that it is advantageous for the courts and the parties to know beforehand if jurisdiction over the claim will be retained.

We do not determine here whether or when a retention of jurisdiction over a habeas claim may be implied after the petition has been dismissed for failure to exhaust state court remedies. We only find that an implied retention of jurisdiction is unwarranted in this case where Tinder was represented by counsel throughout the prior proceedings and there was no compelling justi-

fication for Tinder's failure to pursue any state court remedies before seeking federal court relief. *Cf. Kravitz v. Commonwealth, supra,* 546 F.2d at 1105 (Gibbons, J., dissenting) (pro se petitioners will not know how or be aware of a burden to request retention of jurisdiction by a federal court); *Blair v. People, supra,* 340 F.2d at 546–46 (jurisdiction retained because exhaustion of remedies issue was novel).

## IV

If Tinder's probation is extended or revoked, then he will be in custody and the federal courts would have jurisdiction to hear his habeas claim. Until such time, the threat that Tinder's liberty will be severely restrained for failure to make restitution is too speculative to warrant the exercise of federal habeas jurisdiction. Because we find the district court lacked subject matter jurisdiction, we affirm its dismissal of Tinder's petition for a writ of habeas corpus.